UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────┐
│ USDC SDNY                   │
│ DOCUMENT                    │
│ ELECTRONICALLY FILED        │
│ DOC #:                      │
│ DATE FILED:  9/5/25         │
└─────────────────────────────┘
```

E.K. and E.K., *individually and on behalf of their minor child, J.A.K.*,

Plaintiffs,

-against-

NEW YORK CITY DEPARTMENT OF EDUCATION,

Defendant.

23-CV-11276 (LGS) (BCM)

**REPORT AND RECOMMENDATION TO THE HON. LORNA G. SCHOFIELD**

**BARBARA MOSES, United States Magistrate Judge.**

Plaintiffs E.K. and E.K., acting on behalf of their minor child J.A.K., partially prevailed in administrative proceedings against the New York City Department of Education (DOE) conducted pursuant to the Individuals with Disabilities Education Act (IDEA). On December 29, 2023, plaintiffs filed this action, initially seeking an order (1) reversing certain portions of the August 30, 2023 decision of the State Review Officer (SRO), including those portions denying reimbursement for tutoring and other services obtained by J.A.K. prior to May 3, 2022, *see* Compl. (Dkt. 1) ¶¶ 43-46, 54-68 (Counts I, III, IV); (2) directing the DOE to comply with the orders of reimbursement issued in the underlying administrative proceedings, *see id.* ¶¶ 47-53 (Count II); and (3) awarding plaintiffs their attorneys' fees and related costs incurred in the administrative proceedings and in this action pursuant to IDEA's fee shifting provision, 20 U.S.C. § 1415(i)(3). *See id.* ¶ 69 (Count V).

On September 30, 2024, the parties reached a stipulation of settlement as to Counts I, III, and IV. *See* Sett. Stip. (Dkt. 30). Now before me for report and recommendation are the parties' cross-motions for summary judgment on plaintiffs' remaining claims. (Dkts. 25, 32.) The DOE seeks a judgment dismissing Count II (the implementation claim) on the ground that it has fully complied with the underlying administrative orders. Plaintiffs cross-move for summary judgment

in their favor on Counts II and V, seeking (1) a judgment requiring the DOE to reimburse them for $760.40 that they paid in administrative (credit card processing) fees charged by the provider of J.A.K.'s special education itinerant teacher (SEIT) services, and to pay interest on all reimbursements; and (2) an award of attorneys' fees and costs totaling $96,796.50, including $44,115.00 incurred in the underlying administrative proceedings, $52,276.50 incurred in this action, and $405.00 in costs. The DOE opposes plaintiffs' requests for an additional $760.40 in reimbursement and for prejudgment interest. As to plaintiffs' fee request, the DOE urges the Court to award no more than $27,304.00 for work performed during the administrative proceedings and $8,777.00 for work in this Court, totaling $36,081.00.

For the reasons that follow, defendant's motion should be denied and plaintiffs' motion should be granted in part. Plaintiffs should be reimbursed for the $760.40 in administrative fees they paid to J.A.K.'s SEIT provider, but should not be awarded prejudgment interest on any of the DOE's reimbursement obligations. Plaintiffs should be awarded $66,845.00 in attorneys' fees and costs, consisting of $36,308.00 for fees incurred in the underlying administrative proceedings, $30,132.00 for fees incurred in this action, and $405.00 in costs.

## I.    FACTS[1]

### A.    Administrative Proceedings

J.A.K. attended the Ramaz School (a private school) for the 2020-21, 2021-22, and 2022-23 school years (SYs). JSUP ¶ 1; SRO Decision (EK_006 to EK_031) at 3. During the 2020-21 SY, while J.A.K. was in prekindergarten, his parents learned that he "was spending much

---

[1] The facts set forth herein are taken principally from the parties' Joint Statement of Undisputed Facts (JSUP) (Dkt. 26) and the underlying Administrative Record, which is attached in its entirety (under seal) as Exhibit A (Dkt. 29-1) to the August 30, 2024 declaration of DOE attorney Jason Imbiano (Imbiano Decl.) (Dkt. 29), and consecutively Bates stamped in the format "EK_#." The facts are undisputed unless otherwise noted.

of his school day in the principal's office due to behavioral problems." SRO Decision at 3. Plaintiffs, at their own expense, hired (among other services) a SEIT/behavior specialist from Leap Years Services for Children, Inc. (Leap Years) to observe J.A.K and provide guidance to his classroom teachers. JSUP ¶¶ 2-3; SRO Decision at 3; *see also* Leap Years Invoices (EK_196 to EK_240). Between January 3, 2022 and May 25, 2023, plaintiffs paid $87,072.90 to Leap Years for those SEIT services, including, in some months, an "administrative fee." Leap Years Invoices; E.K. Aff. (Dkt. 33-9) ¶¶ 13-14.[2] In addition, plaintiffs obtained a private occupational therapy (OT) evaluation for J.A.K., after which – in January 2022 – J.A.K. began receiving OT services at plaintiffs' expense. JSUP ¶¶ 2-3; SRO Decision at 3.

In early 2022, in light of J.A.K.'s continued difficulties in the classroom, the Ramaz School suggested that he be evaluated for eligibility for special education services. SRO Decision at 3. In February and March 2022, the DOE conducted evaluations, including a classroom observation, psychoeducational evaluation, OT evaluation and speech/language evaluation. JSUP ¶ 4; SRO Decision at 3. On April 5, 2022, the DOE determined that J.A.K. met the criteria for a Student with a Disability under the IDEA and classified him with the "emotional disturbance" classification. JSUP ¶¶ 5-6; SRO Decision at 3. The DOE created an Individualized Education Services Program (IESP) for J.A.K., with an implementation date of May 3, 2022. JSUP ¶ 7; SRO Decision at 3.

In October and November 2022, plaintiffs had J.A.K. privately evaluated, which resulted in a December 2022 neuropsychological evaluation report. JSUP ¶ 8; SRO Decision at 4.

---

[2] Plaintiffs understand the "administrative fee" to be "a credit card processing fee that was applied only when [they] paid by credit card." E.K. Aff. ¶ 14. Plaintiffs seek reimbursement for the credit card processing fees charged on three occasions in November and December 2022. *See* Leap Years Invoices at EK_206, EK_208, EK_210.

In a Due Process Complaint (DPC) dated April 3, 2023, plaintiffs alleged, *inter alia*, that the DOE failed to offer J.A.K. a free appropriate public education (FAPE) for SYs 2020-21, 2021-22, and 2022-23, and that it failed in its Child Find obligations with respect to J.A.K. for the 2020-21 SY and part of the 2021-22 SY. JSUP ¶ 9; SRO Decision at 4; DPC (EK_092 to EK_103). As redress, plaintiffs sought, *inter alia*, reimbursement "for all out-of-pocket expenses" incurred in connection with the private SEIT services, private tutoring, and private OT they obtained for J.A.K. during the school years at issue, as well as for the December 2022 neuropsychological evaluation. SRO Decision at 4; DPC at 11, ¶¶ 2(d)-(f).

An evidentiary hearing before impartial hearing officer (IHO) Natacha Thompson was held on June 7, 2023. JSUP ¶¶ 10-11; SRO Decision at 4; 6/7/23 Tr. (EK_330 to EK_369). In support of their case before the IHO, plaintiffs submitted 20 exhibits, including copies of the January 3, 2022 through May 25, 2023 Leap Years Invoices, which were admitted into evidence. *See* EK_115 (showing Leap Years Invoices attached as Exhibit L to the DPC); 6/7/23 Tr. at 8:13-15. Plaintiffs also submitted the direct testimony of two witnesses by affidavit, *see* 6/7/23 Tr. at 9:2-5, and presented those witnesses for live cross- and re-direct examination. *Id.* at 15:4-34:11. The DOE submitted five exhibits, but called no witnesses. *Id.* at 6:10-7:5, 9:10-16.[3]

On June 23, 2023, IHO Thompson issued her Findings of Fact and Decision (FOFD), determining that the DOE: (1) met its child find obligations for the 2020-21 and 2021-22 SYs, and (2) provided J.A.K. with a FAPE for the 2020-21 SY and part of the 2021-22 SY, but (3) failed to offer J.A.K. a FAPE for a portion of the 2021-22 SY, beginning May 3, 2022, and all of the 2022-23 SY. SRO Decision at 4; FOFD (EK_032 to EK_050) at 3, 6-14. As redress, the IHO ordered

---

[3] The DOE planned to call a live witness, but learned the day before the hearing that "she's no longer available." 6/7/23 Tr. at 9:15. Consequently, the DOE rested its case immediately after opening statements. *Id.* at 14:11-19.

the DOE to, *inter alia*, (1) implement the April 2022 IESP; (2) reimburse plaintiffs for J.A.K.'s OT evaluation, OT services, private tutoring and SEIT/behavior support, but only for the period of May 3, 2022 through the end of the 2022-23 SY (thus denying reimbursement for the Leap Year services received between January 3 and May 2, 2022); and (3) provide compensatory OT and counseling services. JSUP ¶ 12; SRO Decision at 4; FOFD at 15.

On appeal from the IHO order, plaintiffs requested that the SRO find that the DOE violated its Child Find obligations with respect to J.A.K. (and that it failed to provide J.A.K. with a FAPE) for the 2020-21 and 2021-22 SYs). Plaintiffs also requested that the SRO modify and/or supplement the relief ordered in the FOFD by ordering the DOE to (1) reimburse plaintiffs for *all* out-of-pocket expenses incurred for the 2020-21 and 2021-22 SYs (including prior to May 3, 2022) and (2) reimburse them an additional $6,500.00 for the December 2022 private neuropsychological evaluation. *See* Verified Request for Review (VRFR) (EK_054 to EK_063) at 6.

The DOE cross-appealed, asking the SRO to, *inter alia*, uphold the IHO's findings that the DOE met its Child Find obligations to J.A.K. for the 2020-21 and 2021-22 SYs and find that plaintiffs were not entitled to reimbursement for out-of-pocket expenses incurred prior to May 3, 2022. *See* Verified Answer and Cross Appeal (EK_067 to EK_86) at 4-8. Neither party appealed the portion of the FOFD that ordered the DOE to reimburse plaintiffs for the OT evaluation, OT services, private tutoring, and SEIT/behavior support (provided by Leap Years) from May 3, 2022 through the end of the 2022-23 SY. JSUP ¶ 18.

On August 30, 2023, SRO Carol H. Hague granted the parents' appeal in part and dismissed the DOE's cross-appeal. JSUP ¶ 19; SRO Decision at 26. In her decision, the SRO (1) vacated the IHO's order directing the DOE to implement the April 2022 IESP; (2) reversed the IHO's determination that the DOE fulfilled its Child Find obligations for the entirety of the 2021-22 SY,

and concluded that the DOE denied J.A.K. a FAPE for the entire 2021-22 SY; (3) directed the DOE to reimburse plaintiffs for the OT services obtained during SY 2021-22; and (4) directed the DOE to reimburse them for the December 2022 neuropsychological evaluation. JSUP ¶ 19; SRO Decision at 31. However, the SRO denied plaintiffs' request to be reimbursed for SEIT/behavior support and tutoring services obtained prior to May 3, 2022. *See* JSUP ¶ 19; SRO Decision at 20 (concluding that "the parents did not meet their burden to prove that the private tutoring and SEIT services were appropriate for the student during the 2021-22 school year.").

Following the SRO's decision, plaintiffs worked with their counsel to "identify and collect the documentation that would be required by the DOE's Impartial Hearing Order Implementation Unit ('IHOIU') and the DOE's Bureau of Non-Public School Payables ('NPSP') to obtain the reimbursements ordered in the FOFD and SRO [decision]." E.K. Aff. ¶ 12. On December 15, 2023 – three and a half months after the SRO issued her decision – plaintiffs submitted proof of payment for most of their reimbursable expenses to DOE, including the invoices from Leap Years. E.K. Aff. ¶¶ 13-14.

### B.    Federal Proceedings

Two weeks later, on December 29, 2023, plaintiffs filed the instant action, alleging, in relevant part: (1) that the DOE had thus far failed to "reimburse Plaintiffs for out-of-pocket expenses incurred," as required by the administrative decisions below,[4] and (2) that plaintiffs were entitled to their reasonable attorneys' fees, costs, and expenses, for both the administrative proceedings and the newly-filed federal action. Compl. ¶¶ 47-53, 69.

---

[4] In fact, the IHO expressly gave the DOE 30 days from the submission of the parents' "proof of payment" to reimburse the allowed expenses, *see* FOFD at 15 (EK_46), while the SRO Decision was silent as to any deadline for payment. *See* SRO Decision at 26 (EK_31).

Between February 26 and August 7, 2024, plaintiffs received six checks from the DOE, amounting to $103,149.50, which reimbursed them for the private OT, tutoring, and SEIT/behavior support services that they paid out of pocket during the covered school years. E.K. Aff. ¶¶ 15-20. Although the individual checks did not specify which service(s) were being reimbursed, *id.*, plaintiffs agree that in the aggregate they have been fully compensated for all of the recoverable out-of-pocket expenses for which they provided the DOE with proof of payment, *see id.* ¶ 13 (table of expenses) – except for the $760.40 in administrative fees charged by Leap Years for SEIT services after May 3, 2022.

The parties also engaged in settlement negotiations. On August 16, 2024, they wrote to the Hon. Lorna G. Schofield, United States District Judge, advising that they had reached "impasse" with respect to plaintiffs' implementation claim and attorneys' fee claim. (Dkt. 23.) Then, on August 27, 2024, the DOE offered to "go up to $41k" on attorneys' fees, "contingent on dismissing the case in its entirety." Pl. Reply (Dkt. 41) at 3. Plaintiffs declined the offer, believing it to be "unreasonably low[.]" *Id.* at 4.

On August 30, 2024, the parties filed their settlement stipulation, which resolved Counts I, III, and IV, but noted that plaintiffs "continue to seek resolution" of their claims for reimbursement of the $760.40 that they paid to Leap Years in administrative fees and for attorneys' fees and costs. Sett. Stip. at 2-3. That same day, defendant filed its summary judgment motion, supported by a memorandum of law (Def. Mem.) (Dkt. 27), and the Imbiano Declaration (attaching the Administrative Record). On September 20, 2024, plaintiffs filed their cross-motion, together with a memorandum of law in support of the cross-motion and in opposition to defendant's motion (Pl.

Mem.) (Dkt. 33), and four declarations.[5] The DOE filed its brief in further support of its own motion and in opposition to plaintiffs' cross-motion (Def. Reply) (Dkt. 37) on October 11, 2024, supported by declarations signed by its attorneys Emily Goldman (Dkt. 38), Lauren Howland (Howland Decl.) (Dkt. 39) and Martha Nimmer (Nimmer Decl.) (Dkt. 40).[6] Finally, on October 18, 2024, plaintiffs filed a reply brief in further support of their cross-motion (Pl. Reply) (Dkt. 41), supported by a second declaration from attorney Alizio (Second Alizio Decl.) (Dkt. 41-1).

On March 18, 2025, Judge Schofield referred dispositive motions to me for report and recommendation. (Dkts. 42-43.)

## II.    LEGAL STANDARDS

"In a district court proceeding under the IDEA, the parties and the court typically style the decision as a ruling on a motion for summary judgment, but 'the procedure is in substance an appeal from an administrative determination, not a summary judgment motion.'" *Bd. of Educ. of Yorktown Cent. Sch. Dist. v. C.S.*, 990 F.3d 152, 165 (2d Cir. 2021) (quoting *M.H. v. New York City Dep't of Educ.*, 685 F.3d 217, 226 (2d Cir. 2012)); *see also Hidalgo v. Porter*, 2023 WL 8810276, at *4 (S.D.N.Y. Dec. 20, 2023) ("Summary judgment in the IDEA context is a pragmatic procedural mechanism for reviewing administrative decisions.") (internal quotations and citation omitted).

The court's standard of review is "a more critical appraisal of the agency determination than clear-error review but falls well short of complete *de novo* review." *L.O. ex rel. K.T. v. New York City Dep't of Educ.*, 822 F.3d 95, 108 (2d Cir. 2016) (internal quotations omitted). While the

---

[5] In addition to the E.K. Affidavit, plaintiffs filed declarations signed by their attorneys Steven J. Alizio (Alizio Decl.) (Dkt. 33-1) and Justin B. Shane (Shane Decl.) (Dkt. 33-6), and by retired IHO Mindy G. Wolman (Wolman Decl.) (Dkt. 33-10).

[6] The Court notes that both of the DOE's briefs are internally mis- or unpaginated. To avoid confusion, the Court cites them by their ECF page numbers.

district court must conduct "an independent review of the administrative record and make a determination based on a 'preponderance of the evidence,'" this is "by no means an invitation to the courts to substitute their own notions of sound education policy for those of the school authorities which they review." *Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F.3d 105, 112-13 (2d Cir. 2007) (quoting *Bd. of Educ. v. Rowley*, 458 U.S. 176, 206 (1982)). To the contrary, "federal courts reviewing administrative decisions must give due weight to these proceedings, mindful that the judiciary generally lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy." *Gagliardo*, 489 F.3d at 113 (cleaned up).

The district court's power is limited to "issues that were both properly raised in the DPC and not waived by failing to appeal or cross-appeal to the SRO an adverse finding by the IHO." *Phillips v. Banks*, 656 F. Supp. 3d 469, 483 (S.D.N.Y. 2023) (quoting *C.H. v. Goshen Cent. School Dist.*, 2013 WL 1285387, at *10 (S.D.N.Y. Mar. 28, 2013)), *aff'd*, 2024 WL 1208954 (2d Cir. Mar. 21, 2024). Thus, a plaintiff's failure to exhaust her administrative remedies under the IDEA deprives the district court of subject-matter jurisdiction. *Polera v. Bd. of Educ.*, 288 F.3d 478, 483 (2d Cir. 2002). Proper exhaustion is "critical" because the IDEA's administrative scheme "allows for the exercise of discretion and educational expertise by state and local agencies, affords full exploration of technical educational issues, furthers development of a complete factual record, and promotes judicial efficiency by giving these agencies the first opportunity to correct shortcomings in their educational programs for disabled children." *Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 790 (2d Cir. 2002) (quoting *Polera*, 288 F.3d at 487).

## III.    DISCUSSION

### A.    Administrative Fees

Plaintiffs seek reimbursement for the $760.40 in administrative fees charged to them by Leap Years between May 3, 2022 and May 25, 2023. Pl. Mem. at 6-8. The DOE opposes the request, arguing that plaintiffs failed to exhaust their claim for these fees in the underlying administrative proceedings, and thus are "not legally entitled to reimbursement for such costs." Def. Mem. at ECF pp. 6-7. The DOE reasons that the portion of the FOFD directing it to "reimburse Parent for out-of-pocket expenses from May 3, 2022 for private SEIT/Behavior Support services for Student, within thirty (30) days upon submission of proof of payment," was limited to "the services themselves, and not ancillary costs, such as the credit card processing fee issued by the service provider." *Id.* at ECF p. 11.

However, the sole authority on which defendant relies for this point, *see* Def. Mem. at ECF p. 6, is inapposite. In *Hidalgo*, 2023 WL 8810276, the court denied reimbursement for loan-related expenses that the plaintiffs did not incur until "more than four years after [they] filed their DPC," and never presented to either the IHO or the SRO. *Hidalgo*, 2023 WL 8810276, at *5. Here, by contrast, plaintiffs seek reimbursement for fees that they incurred well before they filed the DPC, and that they submitted to the IHO, who directed the DOE to reimburse their "out-of-pocket expenses" for the services provided by Leap Years (from May 3, 2022). *See* DPC at 11, ¶¶ 2(d); Leap Years Invoices at EK_206, EK_208, EK_210; 6/7/23 Tr. at 8:13-15. Since the IHO made no distinction between the administrative fees and the other fees invoiced by Leap Years, it was incumbent on the DOE (if it believed it should not be required to reimburse the administrative fees) to include this issue in its cross-appeal to the SRO. It did not. Accordingly, defendant's motion for summary judgment on Count II should be denied, and the DOE should be directed to

reimburse plaintiffs for the $760.40 in administrative fees that they paid to Leap Years after May 3, 2022.

### B.    Prejudgment Interest

Plaintiffs additionally seek prejudgment interest (at the federal post-judgment rate set forth in 28 U.S.C. § 1961(a)) on all reimbursements, due to the DOE's "unjustified eight-month delay in paying the reimbursements" after plaintiffs provided the DOE with proof of payment. Pl. Mem. at 2, 9.[7] In opposition, the DOE argues that it "must be afforded time to process payments pursuant to 'ordinary payment procedures[,] [which] comports with the practical realities of bureaucratic administration.'" Def. Reply at ECF pp. 11-12 (alteration in original) (quoting *Mendez v. Banks*, 65 F.4th 56, 63 (2d Cir. 2023), *cert. denied*, 144 S. Ct. 559 (2024)).

As plaintiffs acknowledge, "[p]rejudgment interest is generally not awarded" in IDEA cases. Pl. Mem. at 9. Plaintiffs are correct that an exception may be made, in the district court's discretion, if prejudgment interest is necessary "to ensure that a plaintiff is fully compensated or to meet the 'remedial purpose of the statute involved.'" *Id*. at 9 (quoting *Wickham Contracting Co., Inc. v. Local Union No. 3, Int'l Bhd. of Elec. Workers, AFL-CIO*, 955 F.3d 831, 833-34 (2d Cir. 1992)). However, both of the IDEA cases that plaintiffs cite in support of their request for prejudgment interest involved unusually protracted delays in payment. *See Streck v. Bd. of Educ. of the E. Greenbush Cent. Sch. Dist.*, 408 F. App'x 411, 414 (2d Cir. 2010) (summary order) (the DOE delayed payment for more than a decade); *Doe by & through Doe v. E. Lyme Bd. of Educ.*, 262 F. Supp. 3d 11, 23 (D. Conn. 2017) (the DOE "knowingly persisted in its violations" and

---

[7] In fact, the DOE began making reimbursement payments on February 26, 2024, which was two months and 11 days after plaintiffs submitted their first batch of invoices on December 15, 2023. *See* E.K. Aff. ¶¶ 13, 15; Pl. Mem. at ECF pp. 15-16. Plaintiffs submitted additional Leap Years invoices, amounting to $7,050.00, on March 14, 2024. E.K. Aff. ¶ 17; Pl. Mem. at ECF p. 16. The DOE paid that amount on March 21, 2024. E.K. Aff. ¶ 18; Pl. Mem. at ECF p. 16.

delayed payment for more than six years), *aff'd in relevant part sub nom. Doe v. E. Lyme Bd. of Educ.*, 962 F.3d 649 (2d Cir. 2020).

Here, as noted above, the DOE began issuing reimbursement checks less than two and a half months after plaintiffs submitted their first batch of invoices, and reimbursed plaintiffs for all of their documented expenses (except for the $760.40 in administrative fees) by August 7, 2024, which was less than five months after plaintiffs submitted their second (and final) batch of invoices. *See* E.K. Aff. ¶¶ 13-20; Pl. Mem. at 10. This schedule, while perhaps not ideal, is consistent with the DOE's "ordinary payment procedures" and the "practical realities of bureaucratic administration." *Chaperon v. Banks*, 2025 WL 2207908, at *11 (S.D.N.Y. Aug. 4, 2025) (observing that "agencies need time to process and pay submitted invoices.") (citing *Mendez*, 65 F.4th at 63).

I note as well that plaintiffs did not ask for an award of interest in their DPC – or, for that matter, in their Complaint. Moreover, although it has now been more than a year and a half since plaintiffs submitted the invoices reflecting the Leap Years administrative fees, the amount involved is trivial, and the DOE's position, while not persuasive, was not frivolous. Consequently, I recommend that no prejudgment interest be awarded, as plaintiffs have been (or will be) "adequately" reimbursed by the DOE for their documented out-of-pocket expenses. *See, e.g.*, *S.J. v. New York City Dep't of Educ.*, 2021 WL 100501, at *5 (S.D.N.Y. Jan. 12, 2021) (Schofield, J.) (declining to award prejudgment interest on IDEA fee award notwithstanding plaintiff's contention that the DOE "delayed resolution of fees and sought, in essence, an 'interest free loan'"), *modified*

*on other grounds,* 2021 WL 536080 (S.D.N.Y. Jan. 25, 2021), *aff'd,* 2022 WL 1409578 (2d Cir. May 4, 2022), and *aff'd,* 2022 WL 1409578 (2d Cir. May 4, 2022).[8]

### C.    Attorneys' Fees

Under the IDEA's fee-shifting provision, "a court, in its discretion, may award reasonable attorneys' fees . . . to a prevailing party who is the parent of a child with a disability[.]" 20 U.S.C. § 1415(i)(3)(B)(i)(I). Here, plaintiffs are entitled to reasonable attorneys' fees because "[i]t is undisputed that [they] prevailed in the proceeding[s] before the IHO" and the SRO. *S.F. v. New York City Dep't of Educ.*, 2023 WL 4531187, at *2-4 (S.D.N.Y. July 13, 2023) (plaintiffs were entitled to "seek fees and costs for work before the IHO in the administrative proceeding, and in this follow-on fees litigation."); *accord K.G. v. New York City Dep't of Educ.*, 2024 WL 3466810, at *3 (S.D.N.Y. July 19, 2024) ("In the context of an IDEA proceeding, a plaintiff who receives IHO-ordered relief on the merits is a 'prevailing party.'").[9]

---

[8] In the alternative, should the Court exercise its discretion to award prejudgment interest, the calculation (as to each batch of invoices submitted) should not begin to run until at least 30 days after that batch was submitted. *See* FOFD at 15 (EK_046) (directing the DOE to reimburse plaintiffs for various expenses "within thirty (30) days upon submission of proof of payment").

[9] In its opening brief, the DOE argues, in a footnote, that "[p]laintiffs are not entitled to attorneys' fees for the instant [federal] action because they are not a prevailing party." Def. Mem. at ECF p. 7. The Court disagrees. In *M.F. v. New York City Dep't of Educ.*, 2024 WL 729208 (S.D.N.Y. Feb. 22, 2024), relied on by the DOE, the plaintiff was not a "prevailing party" because she entered into a private, voluntary settlement, which was never "reduced to a written agreement" and was therefore not enforceable by the court. *Id.* at *6; *see also Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 604 (2001) ("*enforceable* judgments on the merits . . . create the 'material alteration of the legal relationship of the parties' necessary to permit an award of attorney's fees.") (emphasis added). Here, plaintiffs are a prevailing party in this Court (even if they do not succeed on their claim for $760.40 in administrative fees) because they entered into a written, expressly enforceable settlement agreement as to Counts I, III, and IV, signed by the district judge. Sett. Stip. at 5; *see also id.* ¶ 7 ("The parties agree that jurisdiction must remain with this Court to enforce the terms of this Stipulation"). In any case, the DOE appears to have since abandoned this argument. In its reply brief, the DOE instead argues that the IDEA "fee cap" should apply to limit plaintiffs' award to fees incurred before August 27, 2024, when it made a $41,000.00 offer of settlement to plaintiffs. Def. Reply at ECF p. 9. This issue is addressed below in Part III(C)(2)(b).

Courts calculate reasonable attorneys' fee awards in IDEA-related actions "by applying the lodestar method, under which 'a fee award is derived by multiplying the number of hours reasonably expended on the litigation [by] a reasonable hourly rate.'" *Y.G. v. New York City Dep't of Educ.*, 2025 WL 2080218, at *1 (2d Cir. July 24, 2025) (alteration in original) (quoting *H.C. v. New York City Dep't of Educ.*, 71 F.4th 120, 126 (2d Cir. 2023)). "The fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *United States v. Carranza*, 751 F. Supp. 3d 295, 306 (S.D.N.Y. 2024) (citation omitted).

Here, plaintiffs seek $96,796.50 in attorneys' fees and costs for work performed by the Law Office of Steven Alizio (LOSA), including $44,115.00 for work performed during the administrative proceedings, $52,276.50 for work performed during this federal action, and $405.00 in costs. Pl. Reply at 10. These figures are premised upon the Court's acceptance of a "reasonable hourly rate" of $450 for LOSA attorneys Steven J. Alizio and Justin B. Shane prior to December 31, 2023, and $465 thereafter. *See id.* at 14. For LOSA paralegal J. Pearl Marasigan, plaintiffs propose a reasonable hourly rate of $150 prior to December 31, 2023, and $165 thereafter. *Id.* Plaintiffs then multiply those rates by 105.3 total attorney and paralegal hours worked on the administrative phase of the case and 122 hours of attorney and paralegal time on the federal component. *See* Alizio Decl. Ex 3 (Dkt. 33-2) (Admin. Billing Records); Second Alizio Decl. Ex. B (Dkt. 41-3) (Fed. Billing Records through 9/20/24); Second Alizio Decl. Ex. A (Dkt. 41-2) (Fed. Billing Records after 9/20/24).

The DOE argues that LOSA's hourly rates should be reduced to no more than $350 an hour for attorneys Alizio and Shane, and no more than $100 an hour for paralegal Marasigan. Def. Reply at ECF pp. 10, 14-15, 19. In addition, the DOE contends that LOSA's billing practices at both the

administrative and federal levels are excessive, such that counsel's hours should be reduced by 20% across the board. *Id.* at ECF pp. 10, 20-27. Finally, the DOE argues that the IDEA fee cap applies – effective August 27, 2024 – and that plaintiffs are therefore not entitled to any fees incurred after that date. *Id.* at ECF pp. 12-13. As a result of these calculations, the DOE seeks to limit plaintiffs' fee award to no more than $36,081.00, including $27,304.00 for worked performed on the administrative proceedings and $8,777.00 for work performed on the federal action through August 27, 2024. *Id.* at ECF p. 9.

### 1.    Reasonable Hourly Rate

The fees awarded in IDEA-related actions "shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished." 20 U.S.C. § 1415(i)(3)(C). In evaluating the reasonableness of the hourly rates requested, courts in our Circuit consider the case-specific factors set out in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), and adopted by the Second Circuit in *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 182, 190 (2d Cir. 2008). The *Johnson* factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Arbor Hill*, 522 F.3d at 186 n.3 (citing *Johnson*, 488 F.2d at 717-19).

"Because the determination of fees should not result in a second major litigation, . . . courts may consider the *Johnson* factors holistically, rather than applying each factor individually to the facts of the case." *V.W. v. New York City Dep't of Educ.*, 2022 WL 37052, at *3 (S.D.N.Y. Jan. 4,

2022) (internal quotations and citation omitted). There is thus "no need to recite and make separate

findings as to all twelve *Johnson* factors as long as they are each considered," as they have been

in this case. *C.B. v. New York City Dep't of Educ.*, 2019 WL 3162177, at *5 (S.D.N.Y. July 2,

2019) (internal quotations and citation omitted).

### a.    Attorney Alizio

Steven J. Alizio, who recorded 21.3 hours working on the administrative proceedings in

this case and 25.2 hours working on the instant federal action, seeks fees at the rates of $450 for

work performed through December 31, 2023, and $465 for work performed thereafter. *See* Pl.

Mem. at 14, 16; Alizio Decl. ¶¶ 17-18, 24. Attorney Alizio has approximately nine years of

litigation experience in the area of special education law. Alizio Decl. ¶ 8; *see also id.* Ex. 4 (Alizio

CV) (Dkt. 33-4) at 1. From approximately October 2016 to September 2017, he worked as a Law

Fellow in the Special Education Unit of the New York Legal Assistance Group. Alizio Decl.

¶¶ 121-12; Alizio CV at 2. He began his own practice and founded LOSA in October 2017. Alizio

Decl. ¶ 12. As the principal attorney of LOSA, he advances approximately 20 education law cases

to the merits stage per year. *Id.* ¶¶ 1, 13-14. Before he became an attorney, Mr. Alizio spent seven

years as a New York State public school teacher. *Id.* ¶¶ 9-10; Alizio CV at 2.

The DOE argues that Mr. Alizio's requested rate of up to $465 per hour is "excessive," and

that a more appropriate hourly rate would be $350. Def. Reply at ECF p. 14 (citing cases in which

Mr. Alizio was awarded $350 or less). Plaintiffs acknowledge that Judge Schofield awarded Mr.

Alizio $325 per hour in a 2022 case, *see* Pl. Mem. at 15 (citing *M.R. v. New York City Dep't of*

*Educ.*, 21-CV-6668 (LGS) (S.D.N.Y. Aug. 24, 2022)), but point out that since then both he and

Mr. Shane (who was awarded $350 per hour in *M.R.*) have gained "an additional three years of

experience in the field of special education law[.]" *Id.* Plaintiffs add that "Courts in this District

have increasingly recognized that higher rates for IDEA attorneys are necessary to attract competent counsel to the area," *id.*, and urge the Court to consider that plaintiffs themselves "have agreed to pay – and are actually paying – LOSA's current hourly rates" in a matter concerning the 2024-25 SY. *Id.* at 16; *see also* E.K. Aff. ¶ 22; Alizio Decl. ¶ 25.

After considering the points raised by the parties and the *Johnson* factors, I conclude that a reasonable hourly rate for Mr. Alizio's work on the administrative proceedings underlying this action would be $400 – that is, higher than the DOE's proposed rate but lower than the rate plaintiffs seek. Plaintiffs are correct that the substantive issues litigated before the IHO and the SRO were somewhat more complex than usual, including whether the DOE failed to meet its Child Find obligations over multiple SYs and whether it denied J.A.K. a FAPE despite the fact that he was parentally placed in a private school. *See* Pl. Mem. at 21-22. On the other hand, the due process hearing lasted less than one hour, and the DOE, which presented five exhibits and no witnesses, rested after plaintiffs' opening statement. *See* 6/7/23 Tr. at 14:13-19; SRO Decision at 4.

Although I credit attorney Alizio's assertions that he has a high success rate and a solid industry reputation, *see* Pl. Mem. at 16-18, he still has less than a decade of special education litigation experience. Moreover, the prevailing rate in this District – not only for attorneys of his seniority but also for attorneys with considerably more experience – is less than the $465 per hour he seeks. Just a few weeks ago, in a consolidated appeal from nineteen separate IDEA fee awards, the Second Circuit affirmed multiple district court decisions awarding fees at rates between $300 and $400 per hour for IDEA attorneys with approximately ten years of experience. *Y.G.*, 2025 WL 2080218, at *1; *see also L.C. v. New York City Dep't of Educ.*, 2025 WL 19850, at *5 (S.D.N.Y. Jan. 2, 2025) (approving hourly rates between $300 and $360 for experienced attorneys in IDEA cases that were not significantly contested).

Even for attorneys with more than twenty years of experience in education law, the prevailing rate for IDEA litigation ranges roughly from $360 to $420 per hour, depending on the circumstances and complexity of the case. *Y.G.*, 2025 WL 2080218, at *1;[10] *see also S.S.(1) v. New York City Dep't of Educ.*, 2025 WL 720512, at *4 (S.D.N.Y. Mar. 6, 2025) (finding an hourly rate of $410 reasonable for the most experienced special education lawyers in a minimally contested case); *K.K. v. New York City Dep't of Educ.*, 2024 WL 4203783, at *8-9 (S.D.N.Y. Aug. 22, 2024) (where the "matter was not seriously contested by the DOE," $425 per hour was reasonable for attorney with more than 20 years of experience, $400 per hour was reasonable for attorney with 15 years of experience, and $325 per hour was reasonable for attorneys with about a decade of experience), *adopted*, 2024 WL 4203251 (S.D.N.Y. Sept. 16, 2024).

Finally, although plaintiffs recently agreed to pay $465 per hour for Mr. Alizio's time in connection with their claims for the 2024-25 SY, *see* Alizio Decl. ¶ 25, they retained LOSA for the instant matter – including the underlying administrative proceedings – pursuant to the firm's "alternative fee structure," under which they paid a "limited flat fee" at the outset of the engagement, after which LOSA worked "on what is essentially a contingency basis." *Id.* ¶¶ 21, 24. "It is relevant that [LOSA] took the matter on a contingency basis and assumed some risk." *K.O. v. New York City Dep't of Educ.*, 2022 WL 1689760, at *10 (S.D.N.Y. May 26, 2022), *aff'd sub*

---

[10] Of the nineteen district court decisions affirmed by the Second Circuit in *Y.G.*, only one awarded an IDEA attorney (in that case, a firm founder who had more than 25 years of experience) an hourly rate above $420. *See Y.G. v. New York City Dep't of Educ.*, 2022 WL 1046465, at *2 (S.D.N.Y. Apr. 7, 2022) (awarding $550 per hour to Andrew Cuddy where, "[a]mong other factors, the administrative hearing was heavily contested and required the skill of an experienced IDEA litigator to prevail, as there were multiple days of hearings and five hearings on the merits."), *aff'd*, 2025 WL 2080218. As later cases have noted, however, this was an "outlier." *N.L. v. New York City Dep't of Educ.*, 2023 WL 2523636, at *5 (S.D.N.Y. Mar. 15, 2023) (distinguishing *Y.G.* and determining that $420 per hour was the reasonable rate for a special education attorney with more than twenty years of experience), *aff'd*, 2025 WL 2080218.

*nom. Y.G.*, 2025 WL 2080218. On the other hand, the fact that LOSA charges *some* clients $465 per hour for Mr. Alizio's time, in *some* cases, is of limited weight where, as here, most of the firm's clients opt for a contingency arrangement. *See, e.g., A.D. v. New York City Dep't of Educ.*, 2019 WL 1292432, at *4 (S.D.N.Y. Mar. 21, 2019) ("[T]he existence of a contingency-fee arrangement minimizes the probative value of the hourly rates an attorney may publicly advertise[.]"); *K.F. v. New York City Dep't of Educ.*, 2011 WL 3586142, at *4 (S.D.N.Y. Aug. 10, 2011) (an "agreed-upon rate . . . takes on less significance when the client knows it will never pay that amount.").

For these reasons – and accounting for inflation – I recommend an hourly rate of $400 for Mr. Alizio's work on the underlying administrative proceedings. However, for his work in this Court – where he is principally pursuing fees-on-fees – I recommend a 10% discount, bringing his hourly rate for this portion of the case to $360. *See L.M. v. New York City Dep't of Educ.*, 2023 WL 2872707, at *5 (S.D.N.Y. Feb. 14, 2023) (recommending a 10% discount for work performed on the federal fee application as opposed to the underlying administrative proceedings), *adopted*, 2023 WL 2495917 (S.D.N.Y. Mar. 14, 2023); *C.M. v. New York City Dep't of Educ.*, 2022 WL 21770558, at *7 (S.D.N.Y. Aug. 29, 2022) (same), *adopted*, 2024 WL 4054370 (S.D.N.Y. Sept. 5, 2024).[11]

> b.    *Attorney Shane*

Justin B. Shane, who recorded 73.1 hours working at the administrative level in this case and 82.4 hours working on the instant federal action, also seeks fees at the rate of $450 per hour

---

[11] As explained in *L.M.*, "[t]he administrative work entails 'greater risk' and requires 'more skill' than the 'more quotidian' tasks associated with 'negotiating with [DOE] over attorneys' fees and presenting Plaintiff's argument with respect to attorney's fees.'" 2023 WL 2872707, at *5 (quoting *M.H. v. New York City Dep't of Educ.*, 2021 WL 4804031, at *14 (S.D.N.Y. Oct. 13, 2021), *aff'd sub nom. H.C.*, 71 F.4th 120.

for work performed through December 31, 2023, and $465 for per for work performed thereafter. Pl. Mem. at 18-19; Admin. Billing Records at ECF p. 12; Fed. Billing Records through 9/20/24 at ECF p. 11; Fed. Billing Records after 9/20/24 at ECF p. 3. The DOE argues that Mr. Shane's reasonable rate, like Mr. Alizio's, is $350 per hour. Def. Reply at ECF p. 14-15.

Mr. Shane has been licensed to practice law since 2006 and has practiced special education law since 2017, when he opened his own firm specializing in IDEA cases. Pl. Mem. at 18-19; Shane Decl. ¶ 5; Shane CV (Dkt. 33-7) at 1. Since 2019, he has worked with LOSA "as an of-counsel attorney," and in January 2022 he became a partner at LOSA. Shane Decl. ¶ 5: Shane CV at 1; Alizio Decl. ¶ 19. In total, he has approximately nineteen years of general litigation experience, and eight years of specialized experience in education law. *Id*. Like Mr. Alizio, Mr. Shane once worked as a public school teacher – in his case, teaching middle school and high school science for three years. Shane Decl. ¶ 7.

After considering the points raised by the parties and the *Johnson* factors, I conclude that $400 would be a reasonable hourly rate for Mr. Shane's work on the underlying administrative proceedings, and that $360 per hour would be reasonable for his work in this Court.

### c.    *Paralegal Marasigan*

Finally, plaintiffs seek fees at the rate of $150 per hour for work performed by paralegal J. Pearl Marasigan through December 31, 2023, and at the rate of $165 per hour for work performed by Ms. Marasigan thereafter. Mr. Marasigan has worked as a paralegal at LOSA since January 2023. *See* Marasigan CV (Dkt. 33-5) at 1. Before that, she was the Arts Department Coordinator at a high school. *Id*. The DOE asserts that her reasonable hourly rate is $100. Def. Reply at ECF pp. 10, 18.

Given Ms. Marasigan's limited experience as a paralegal, I agree with the DOE. In this District, legal paraprofessionals are "consistently [] awarded fees at rates of $125 an hour for senior paralegals and $100 an hour for paralegals and law clerks." *N.G.B. v. New York City Dep't of Educ.*, 2023 WL 2711753, at *5 (S.D.N.Y. Mar. 30, 2023), *aff'd sub nom. Y.G.,* 2025 WL 2080218, *and aff'd,* 2025 WL 2078379 (2d Cir. July 24, 2025); *see also K.K.*, 2024 WL 4203783, at *8 (collecting cases). Consequently, $100 per hour would be a reasonable rate for Ms. Marasigan. Due to the nature of a paralegal's work, however, I would not discount that rate further for Ms. Marasigan's time spent on the instant federal litigation.

### 2.    Reasonable Hours and Costs

I now turn to the question whether the hours expended were reasonable. When determining the number of hours reasonably expended, "courts consider . . . whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *O.R. v. New York City Dep't of Educ.*, 340 F. Supp. 3d 357, 367 (S.D.N.Y. 2018) (quoting *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992)). The inquiry is guided by the unique facts of each case, and a court may, in its discretion, deny compensation for "hours that are excessive, redundant, or otherwise unnecessary." *Id.* at 367 (citation omitted); *see also H.C.*, 71 F.4th at 126.

In doing so, the court "may attempt to identify specific hours that should be eliminated, or it may simply reduce the award by a reasonable percentage." *R.G. v. New York City Dep't of Educ.*, 2019 WL 4735050, at *3 (S.D.N.Y. Sept. 26, 2019) (internal quotations omitted) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436-37 (1983)). The court "need not, and indeed should not" become a "green-eyeshade accountant[]," because "[t]he essential goal in shifting fees . . . is to do rough justice, not to achieve auditing perfection." *Fox v. Vice,* 563 U.S. 826, 838 (2011). There is no set

formula for determining the reasonable number of hours expended, and the court may "consider[] all pertinent factors," including the *Johnson* factors. *Y.G.*, 2025 WL 2080218, at *1.

### a.    Administrative Proceedings

For the underlying administrative proceedings, plaintiffs seek a fee award for 21.3 hours of attorney work by Mr. Alizio, 73.1 hours of attorney work by Mr. Shane, and 10.9 hours of paralegal work by Ms. Marasigan, totaling 105.3 hours. *See* Admin. Billing Records at ECF p. 12. In opposition, the DOE argues that LOSA "billed excessively at every stage of the administrative proceeding," warranting a 20% global reduction. Def. Reply at ECF p. 23; Howland Decl. ¶ 6. For example, in the DOE's view, LOSA spent too many hours preparing for the "minimally contested" administrative hearing, Def. Reply at ECF p. 23; recorded a "demonstrably excessive" total of approximately 13 hours to prepare the 12-page DPC, only 11 pages of which contained "fact-specific allegations," *id*. at ECF pp. 23-24; should not have needed 2.1 hours to read, annotate, and discuss the FOFD, *id*. at ECF p. 25; and spent an "egregious" 14.7 hours to draft and revise the appeal to the SRO from the FOFD. *Id*. at ECF p. 25.

Because this Court is not a "green-eyeshade accountant[]," *Fox*, 563 U.S. at 838, I will not address each billing entry challenged by the DOE. At least some of the DOE's complaints, however, are overblown. For example, it was not inappropriate for plaintiffs' attorneys to spend a total of 14.2 hours drafting and editing the 12-page DPC. In *T.P. v. New York City Dep't of Educ.*, 2024 WL 986587 (S.D.N.Y. Mar. 7, 2024) – the case on which the DOE relies for its claim that this was "grossly excessive" – the firm spent 13.5 hours drafting and editing a simpler, 7-page DPC. *See id*. at 9. Moreover, the court in *T.P.* awarded fees for 75% of those hours, *see id*. at *10, thus approving a ratio of 1.45 hours per page of the DPC. In the case at bar, LOSA spent 1.18 hours per page on drafting and editing plaintiffs' DPC. This is well within the range that courts in

this District have found reasonable. *See, e.g.*, *C.B.*, 2019 WL 3162177, at *10 (awarding 21.1 hours for a 19-page DPC); *Y.S. v. New York City Dep't of Educ.*, 2022 WL 4096071, at *5 (S.D.N.Y. Sept. 6, 2022) (awarding 10.48 hours for an 8-page DPC), *aff'd sub nom. Y.G.*, 2025 WL 2080218.

Similarly, I do not find the approximately 17 hours that LOSA spent preparing for the due process hearing to be unreasonable. It is true that the hearing lasted only 52 minutes, resulting in a "prep to hearing ratio of more than 19:1," Def. Reply at 24, which is high. But prep-to-hearing ratios do not always tell the whole story. In this case, as plaintiffs note, "LOSA submitted the direct testimony of its witnesses by affidavit (EK_246-258)." Pl. Reply at 9. Drafting and revising the witness affidavits, which accounted for approximately 5.7 hours of LOSA's hearing preparation, *see* Admin. Billing Records at ECF pp. 4-6, resulted in a shorter, more efficient hearing. In my view, LOSA should not be penalized for adopting this approach. I note as well that the hearing was truncated in part because the DOE's witness became unavailable – which LOSA did not know until the day before the hearing. *See* 6/7/23 Tr. at 9:13-16.

The DOE also challenges the time that LOSA attorneys spent reviewing the FOFD, preparing the request for review, reviewing the SRO decision, and engaging in implementation work. Upon reviewing the firm's billing records, however, I do not find these hours excessive – except for the 14.7 hours that LOSA spent drafting and revising the 10-page VRFR, which largely recycled the arguments raised at the due process hearing, and the approximately four hours that Mr. Alizio billed for paralegal and/or clerical work, such as filing, printing, and scanning documents. *See* Def. Reply at PDF p. 26; Admin. Billing Records at ECF pp. 8-9. Accordingly, I recommend a fairly modest 5% reduction to the hours billed by Mr. Alizio and Mr. Shane for the administrative proceedings. *See E.W. v. New York City Dep't of Educ.*, 2023 WL 3138022, at *9

(S.D.N.Y. Apr. 28, 2023) (recommending 5% reduction), *adopted as modified*, 2023 WL 4883324 (S.D.N.Y. July 31, 2023), *aff'd sub nom. Y.G.*, 2025 WL 2080218.

A more significant reduction, however, is required for Ms. Marasigan's hours. More than 60% of the 10.9 paralegal hours billed to the administrative proceedings were dedicated to purely clerical tasks, such as "saving" documents (at least 20 entries), converting documents into PDFs (at least 7 entries), filing or serving documents (at least 5 entries), and updating timesheets (1 entry). Clerical (or "secretarial") tasks are generally not compensable in IDEA fee shifting litigation. *See O.R.,* 340 F. Supp. 3d at 368 (disallowing a fee award for purely clerical or secretarial tasks such as downloading or copying documents, organizing files, and informing individuals about hearing dates, and collecting cases).

Moreover, it is unlikely that it took Ms. Marasigan 6 minutes (0.10 hours) to complete each of the approximately two dozen minor tasks she billed in that manner, such as downloading and saving documents. *See* Admin. Billing Records at ECF pp. 1-4, 6-8, 10-11. As the court explained in *H.A. v. New York City Dep't of Educ.*, 2022 WL 580772, at *9 (S.D.N.Y. Feb. 25, 2022), it is not reasonable to "bill[] in increments of 0.10 hours – the lowest available – for minor administrative tasks," particularly where each task "could likely have been discharged in seconds." Accordingly, I recommend that the paralegal hours billed to the administrative proceedings be reduced by 60%. *See, e.g.*, *G.B. ex rel. N.B. v. Tuxedo Union Free Sch. Dist.*, 894 F. Supp. 2d 415, 439 (S.D.N.Y. 2012) (applying 75% reduction where paralegal billed for non-compensable clerical work); *C.L. on behalf of C.L.G. v. New York City Dep't of Educ.*, 2022 WL 17156715, at *4 (S.D.N.Y. Nov. 22, 2022) (reducing LOSA's total award for the federal fee action by 50%, due in part to "the 0.1 increments that LOSA repeatedly billed for tasks that should not have taken more than several moments") (internal quotation marks and citation omitted).

24

Applying the reasonable hourly rates discussed in Part III(C)(1) of this Report to the reasonable number of hours spent by each LOSA timekeeper during the administrative proceedings, I conclude that plaintiffs should be awarded a total of **$36,308.00** for the administrative stage, as follows:

| Timekeeper | Reasonable Hourly Rate | Hours Billed | Discount | Reasonable Hours | Total |
|---|---|---|---|---|---|
| Alizio | $    400.00 | 21.30 | 5% | 20.24 | $    8,094.00 |
| Shane | 400.00 | 73.10 | 5% | 69.45 | 27,778.00 |
| Marasigan | 100.00 | 10.90 | 60% | 4.36 | 436.00 |
| Total for Administrative Proceedings | | | | | **$  36,308.00** |

### b.    *Federal Action*

Plaintiffs request compensation for 122 hours spent litigating the instant federal action (approximately 116% of the hours they spent on the administrative proceedings), including 25.2 hours worked by Mr. Alizio, 82.4 hours by Mr. Shane, and 14.4 hours by Ms. Marasigan. *See* Fed. Billing Records through 9/20/24; Fed. Billing Records after 9/20/24. Again, the DOE challenges LOSA's billing practices as excessive, arguing – among other things – that many of their federal filings contain "copy-and-paste" material from the administrative record and/or from filings that LOSA has submitted in other similar actions in this District. Def. Reply at ECF pp. 19-24.

Further, the DOE contends that plaintiffs are not entitled to any fees for work after August 27, 2024, when it made a $41,000.00 settlement offer by email. *Id.* at ECF pp. 9, 12-13; *see also* Nimmer Decl. Ex. 1 (Dkt. 40-1) ("On fees, I can go up to $41k. It would naturally be contingent on dismissing the case in its entirety. It's the best I can do. Let me know if that works."). Under the IDEA's "fee cap," the court may not award attorneys' fees and related costs "subsequent to the time of a written offer of settlement to a parent if" the court "finds that the relief finally obtained by the parents is not more favorable to the parents than the offer of settlement." 20 U.S.C. § 1415(i)(3)(D)(i). "In other words, a state or local educational agency can cut off a parent's right

to fees-on-fees by making a settlement offer equal to or greater than the reasonable fees and expenses to which the parent is entitled on the date that the offer is made." *C.M.*, 2022 WL 21770558, at *3.

In response, plaintiffs contend that defendant did not make a "bona fide settlement offer," but "at best, . . . an invitation to re-open settlement negotiations," and "more likely, . . . a last-minute attempt to 'cap' Plaintiffs' legal fees on the eve of summary judgment briefing after months of bad faith negotiations." Pl. Reply at 3. Mr. Alizio adds that by offering $41,000.00 just three days before its summary judgment motion was due, the DOE implicitly admitted that its prior offer of $30,000.00, made on August 2, 2024, "was unreasonably low." Second Alizio Decl. ¶ 13. Since that offer was made, moreover, plaintiffs had "incurred significantly more legal fees," *id*. ¶ 14, and they were not willing to dismiss their remaining claims concerning the administrative fee and prejudgment interest. Consequently, plaintiffs rejected the DOE's $41,000.00 settlement offer. *Id*.

Although attorney Imbiano's August 27 email was breezy and informal, I reject plaintiffs' contention that it was merely an "invitation to reopen settlement negotiations," as opposed to an actual settlement offer. It is clear from attorney Alizio's response that he understood exactly what was being offered, treated it as a bona fide (if disappointing) offer, and turned it down. *See* Second Alizio Decl. ¶¶ 13-14. However, plaintiffs are correct that the DOE's final settlement offer was too little, too late. As shown above, plaintiffs reasonably incurred $36,308.00 in attorneys' fees in connection with the administrative proceedings alone. As shown below, even after the application of sensible discounts to LOSA's hourly rates and to the hours spent on the federal action, plaintiffs reasonably incurred more than a total of $41,000.00 before August 27. Accordingly, they may seek their fees and costs incurred after that date. *See* 20 U.S.C. § 1415(i)(3)(D)(i).

LOSA started drafting plaintiffs' federal complaint on December 20, 2023. *See* Fed. Billing Records through 9/20/24 at ECF p. 1. Between that date and August 27, 2024, LOSA attorneys billed 37.9 hours of work. *See* Fed. Billing Records through 9/20/24 at ECF pp. 1-8. These hours were primarily spent preparing and filing the complaint and related case-initiating documents; engaging in settlement negotiations (which resulted in the resolution of three of plaintiffs' five causes of action); and monitoring the DOE's implementation of the SRO Decision.

For the remaining time that LOSA spent working on the federal action (that is, from August 28, 2024 to October 18, 2024, when plaintiffs filed their summary judgment reply brief), the firm seeks compensation for an additional 84.1 hours of legal work. *See* Fed. Billing Records through 9/20/24 at ECF pp. 8-11; Fed. Billing Records after 9/20/24 at ECF pp. 2-3. These hours were primarily dedicated to preparing plaintiffs' summary judgment papers, which are largely focused on the fee issue. *See* Fed. Billing Records through 9/20/24 at ECF p. 11; Fed. Billing Records after 9/20/24 at ECF pp. 2-3.[12]

The Second Circuit grants district courts "'great leeway' in deciding the scope of the award in cases seeking fees-on-fees pursuant to the IDEA." *C.M.*, 2022 WL 21770558, at *13 (quoting *K.L. v. Warwick Valley Cent. Sch. Dist.*, 584 F. App'x 17, 20 (2d Cir. 2014)). However, "[m]indful of the Supreme Court's admonition that the determination of fees should not result in a second major litigation," *G.T. v. New York City Dep't of Educ.*, 2020 WL 1516403, at *10 (S.D.N.Y. Feb. 12, 2020) (internal quotations and citation omitted), courts in this District typically limit awards in such cases "to a fraction – often a small fraction – of the time spent on the underlying

---

[12] 14 of the 18 pages of argument in plaintiffs' principal brief, and 7 of the 10 pages of argument in their reply brief, are devoted to their fee application. Similarly, four of the five declarations and affidavits that plaintiffs submitted as part of their summary judgment papers (all except the E.K. Affidavit) are devoted primarily to arguing that LOSA's rates and billing practices are reasonable.

administrative proceeding." *Id.* (collecting cases). Where, as here, a law firm has spent more time litigating its own fees in this forum than it spent litigating its clients' claims in the administrative forum, it is not uncommon for courts to slash the requested fees-on-fees award by up to 50%. *See, e.g., C.M.*, 2022 WL 21770558, at *13 (collecting cases and recommending 50% reduction); *B.B. v. New York City Dep't of Educ.*, 2018 WL 1229732, at *3 (S.D.N.Y. Mar. 8, 2018) (noting that "[t]he legal basis for fee petitions is well-plowed acreage," and cutting the compensable hours of plaintiffs' federal attorney by 50%).

I do not recommend such a deep cut here, in part because, when this case commenced, the parties were still contesting the merits of plaintiffs' administrative claims. Moreover, LOSA was able to efficiently resolve at least some of those issues before the parties' summary judgment motions were due. But the centerpiece of what now remains in dispute – after the parties settled Counts I, III, and IV on August 30, 2024 – is plaintiffs' fee application, which dominates the parties' summary judgment briefs. Unsurprisingly, the remaining merits issues (the $760.40 dispute over the Leap Years administrative fees, and plaintiffs' request for prejudgment interest at the federal rate) receive much shorter shrift in both sides' briefs. Thus, plaintiffs' fee application not only "threatened to become" but has become "a second major litigation, dwarfing the underlying administrative proceeding." *G.T.*, 2020 WL 1516403, at *10 (internal quotations omitted).

As noted above, LOSA billed a total of 105.3 hours in the underlying administrative proceedings, but seeks fees for 122 hours in this action. Plaintiffs submitted two affidavits in support of their administrative complaint, but here they have submitted five, including what is essentially expert opinion testimony, from a former IHO (who now practices education law), that LOSA's principals are good lawyers, *see* Wolman Decl. ¶ 11, and that their requested hourly rates are "very reasonable given the level of experience and skill I've observed[.]" *Id.* ¶ 13. Neither the

extra hours nor the extra declarations were reasonably required to present what is, at heart, a straightforward fee application. *See B.B.*, 2018 WL 1229732, at *3 ("[A] competent attorney should not have needed more than 40 hours to litigate this fee petition.").

On this record, and having considered all of the *Johnson* factors, I conclude that the hours incurred by LOSA on the federal litigation should be reduced by 25%. Applying the same reasonable hourly rates determined above, I recommend that plaintiff be awarded a total of **$30,132.00** for LOSA's work in this Court,[13] as follows:

| Timekeeper | Reasonable Hourly Rate | Hours Billed | Discount | Reasonable Hours | Total |
|---|---|---|---|---|---|
| Alizio | $        360.00 | 25.20 | 25% | 18.90 | $      6,804.00 |
| Shane | 360.00 | 82.40 | 25% | 61.80 | 22,248.00 |
| Marasigan | 100.00 | 14.40 | 25% | 10.80 | 1,080.00 |
| Total for Federal Action | | | | | $     30,132.00 |

### D.    Costs

Finally, "[a] district court may award reasonable costs to the prevailing party in IDEA cases." *C.D. v. Minisink Valley Cent. Sch. Dist.*, 2018 WL 3769972, at *12 (S.D.N.Y. Aug. 9, 2018) (citing 20 U.S.C. § 1415(i)(3)(B)(i)(1)). Plaintiffs seek to recover the $405.00 filing fee in this Court. The DOE does not object. Consequently, $405.00 in costs should also be awarded.

### E.    Summary

To summarize, I recommend an award of **$66,440.00** in attorneys' fees, calculated as set forth below, plus **$405.00** in costs:

---

[13] Of that $30,132.00, approximately $8,049.00 was incurred on or before August 27, 2024. Thus, as of the date of the DOE's final settlement offer, plaintiffs had reasonably incurred a total of approximately $44,357.00 ($36,308.00 + $8,049.00) in attorneys' fees.

**Administrative Proceedings**

| Timekeeper | Hourly Rate | Hours Billed | Discount | Reasonable Hours | Total |
|---|---|---|---|---|---|
| Alizio | $    400.00 | 21.30 | 5% | 20.24 | $    8,094.00 |
| Shane | 400.00 | 73.10 | 5% | 69.44 | 27,778.00 |
| Marasigan | 100.00 | 10.90 | 60% | 4.36 | 436.00 |
| Total for Administrative Proceedings | | | | | $    36,308.00 |

**Federal Action**

| Timekeeper | Reasonable Hourly Rate | Hours Billed | Discount | Reasonable Hours | Total |
|---|---|---|---|---|---|
| Alizio | $    360.00 | 25.20 | 25% | 18.90 | $    6,804.00 |
| Shane | 360.00 | 82.40 | 25% | 61.80 | 22,248.00 |
| Marasigan | 100.00 | 14.40 | 25% | 10.80 | 1,080.00 |
| Costs | | | | | 405.00 |
| Total for Federal Action | | | | | $    30,537.00 |

**Grand Total Fees and Costs:**                                    **$    66,845.00**

## IV.    CONCLUSION

For the reasons set forth above, I respectfully recommend that defendant's motion for summary judgment (Dkt. 25) be DENIED; that plaintiffs' motion for summary judgment (Dkt. 32) be GRANTED IN PART; and that judgment be awarded to plaintiffs in the amount of **$67,605.40**, consisting of **$760.40** as reimbursement for the administrative fees charged by Leap Years, **$36,308.00** for legal fees incurred in the underlying administrative proceeding, **$30,132.00** for fees incurred in this civil action, and **$405.00** in expenses.

Dated: New York, New York
        September 5, 2025

**BARBARA MOSES**
**United States Magistrate Judge**

## NOTICE OF PROCEDURE FOR FILING OF OBJECTIONS
## TO THIS REPORT AND RECOMMENDATION

The parties have 14 days from this date to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), unless they receive this Report and Recommendation solely by mail, in which case they have 17 days from the date on which it was mailed. *See* Fed. R. Civ. P. 6(a), 6(d). Any objections must be filed with the Clerk of the Court, addressed to the Hon. Lorna G. Schofield, and delivered to Judge Schofield in accordance with her individual practices. Any request for an extension of the deadline to file objections must also be directed to Judge Schofield. **Failure to file timely objections will result in a waiver of such objections and will preclude appellate review.** *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018) (summary order); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).